## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**B., et al.**                                          **CIVIL ACTION**

**VERSUS**                                              **CASE NO. 13-6068**

**ORLEANS PARISH SCHOOL DISTRICT**                      **SECTION: "G" (3)**

## ORDER

Before the Court is Defendant Orleans Parish School District's ("OPSB"[1]) "Motion for Summary Judgment."[2]  Having considered the motion, the memoranda in support and in opposition, the statements made at oral argument, the administrative record, the additional evidence submitted by the parties, and the applicable law, the Court will grant the motion.

## I. Background

### A.     *Factual Background*

In this action, D.B. and C.B. ("Plaintiffs") seek reimbursement from the OPSB  for expenses related to the initiation and completion of an Independent Educational Evaluation ("IEE") of their son, S.B., which was conducted during the 2011-2012 school year.[3]  S.B.  is a child identified with the disability of autism under the Individuals with Disabilities Education Act ("IDEA").[4]

On August 25, 2011, Plaintiffs emailed OPSB to request an IEE at pubic expense for S.B.[5]

---

[1] The parties refer to the Defendant as the Orleans Parish School Board, or "OPSB,"in their briefing.  For ease of reference, the Court will do the same herein.

[2] Rec. Doc. 19.

[3] Rec. Doc. 1 at ¶ 1.

[4] Rec. Doc. 19-6 at ¶ 2.

[5] *Id.* at ¶ 3.

OPSB granted the request on September 6, 2011.[6]  At the administrative hearing in this matter, Plaintiffs stipulated that OPSB informed them that the IEE must follow the criteria set forth in Louisiana Bulletin 1508, Pupil Appraisal Handbook ("Bulletin 1508").[7] On October 3, 2011, Plaintiffs notified OPSB that they had selected Dr. Steven York, a psychologist, to conduct the IEE.[8] However, Dr. York was unable to complete the IEE, and in January 2012, Plaintiffs hired Dr. Patricia Brockman to complete the evaluation.[9]

On April 23, 2012, OPSB received a signed copy of the IEE completed by Dr. Brockman.[10] OPSB reviewed the evaluation against the applicable agency criteria set forth in Bulletin 1508 and notified Plaintiffs on May 7, 2012 that the IEE was not in compliance with the agency criteria.[11] OPSB invited Dr. Brockman to contact Deloris Simms, OPSB Appraisal External Evaluation Reviewer, to discuss the areas of alleged non-compliance.[12] Neither Plaintiffs nor Dr. Brockman have contacted Ms. Simms regarding the alleged deficiencies in the IEE.[13]  On January 31, 2013, OPSB received a request from Plaintiffs for reimbursement for the cost of the IEE.[14] On February 28, 2013, OPSB notified Plaintiffs again that an IEE obtained with public funds must meet the same

---

[6] *Id.* at ¶ 5; Rec. Doc. 25-1 at ¶ 5; Rec Doc. 1 at ¶ 15.

[7] *Id.* at ¶ 6; *see also* Rec. Doc. 19-4 at p. 3.

[8] *Id.* at ¶ 7.

[9] Rec. Doc. 1 at ¶¶ 35, 36.

[10] Rec. Doc. 19-6 at ¶ 10.

[11] *Id.* at ¶ 11.

[12] *Id.* at ¶ 12.

[13] *Id.*

[14] *Id.* at ¶ 40.

criteria used by the OPSB when it conducts an evaluation, and the IEE submitted for review failed to meet those criteria.[15] OPSB denied reimbursement for the IEE at issue.[16]

On April 30, 2013, Plaintiffs requested a due process hearing in part to contest OPSB's denial of reimbursement for the IEE.[17] A preliminary hearing was conducted on June 18, 2013 before Administrative Law Judge Robert Aguiluz (the "ALJ") of the Division of Administrative Law.[18] On August 14, 2013, the ALJ found that "[r]eimbursement is not a remedy available to the parents under the IDEA because the criteria for the evaluation obtained by the parents was not the same as the required Bulletin 1508 criteria used by the OPSB."[19]

## B.    *Procedural Background*

On October 7, 2013, Plaintiffs filed the Complaint in this matter, wherein they seek injunctive relief in the form of reimbursement of all expenses related to obtaining and conducting the IEE at issue.[20] OPSB filed the pending motion for summary judgment on July 31, 2014,[21] and Plaintiffs submitted a memorandum in opposition on August 13, 2014.[22] OPSB filed a reply on

---

[15] *Id.* at ¶ 15.

[16] *Id.* at ¶ 17.

[17] Rec. Doc. 11-1 at p. 8. The parties allude in their briefs to a 2012 administrative hearing before Judge Tameka Johnson of the Louisiana Division of Administrative Law. However, the record for the 2012 hearing has not been provided to the Court.

[18] *Id.* at p. 210.

[19] *Id.* at p. 202.

[20] Rec. Doc. 1. Plaintiffs additionally seek a declaratory judgment.

[21] Rec. Doc. 19.

[22] Rec. Doc. 25.

August 19, 2014.[23] Oral argument on this motion was conducted on August 20, 2014.[24] Plaintiffs then filed a supplemental memorandum on August 25, 2014;[25] OPSB submitted a supplemental memorandum on September 1, 2014.[26] On September 15, 2014, Plaintiffs filed a response.[27] Finally, on September 17, 2014, OPSB filed a sur-reply.[28]

## II. Parties' Arguments

### A.   *OPSB's Arguments in Support*

OPSB argues that it is entitled to summary judgment on Plaintiffs' IDEA claims because it has established both procedural and substantive compliance with the IDEA.[29] First, OPSB argues that it followed the procedural mandates of the IDEA and the regulations promulgated by the Louisiana Board of Elementary and Secondary Education ("BESE") in Bulletin 1508.[30] Specifically, OPSB argues that it granted Plaintiffs' request for the IEE within eight days of receiving the request, informed Plaintiffs that the IEE must meet agency criteria, and provided appropriate notice of reasonable cost criteria.[31] With respect to substantive compliance with the IDEA, OPSB argues that "the ALJ affirmed that the School Board did not deny reimbursement for

---

[23] Rec. Doc. 31.

[24] Rec. Doc. 32.

[25] Rec. Doc. 35.

[26] Rec. Doc. 36.

[27] Rec. Doc. 41.

[28] Rec. Doc. 44.

[29] Rec. Doc. 19-1 at p. 11 (citing *Bd. of Educ. v. Rowley*, 458 U.S. 176 (1982)).

[30] *Id.* at p. 12.

[31] *Id.* at p. 14.

a compliant IEE – instead, the School Board denied reimbursement for an evaluation which did not meet Bulletin 1508 criteria."[32] OPSB avers that the decision of the ALJ must be accorded due weight because he was trained to understand the provisions of the IDEA and "rendered a factually and legally valid decision."[33] Additionally, OPSB contends that Plaintiffs bear the burden of persuasion here because they are contesting OPSB's reimbursement decision.[34]

## B.    Plaintiffs' Arguments in Opposition

Plaintiffs first contend that OPSB bears the burden of proof as to whether it is justified in denying reimbursement to Plaintiffs for the IEE.[35] Next, Plaintiffs argue that this Court should give the ALJ decision "little or no deference" because it was based on the ALJ's interpretation of federal law, rather than an assessment of the facts in this case, and because it was rendered without an evidentiary hearing.[36]

Next, Plaintiffs contend requiring formalistic compliance with every requirement in Bulletin 1508 would impose an unnecessary burden on parents that is inconsistent with their right to obtain an IEE at public expense.[37] According to Plaintiffs, replication of the Bulletin 1508 evaluation process is not required for reevaluation.[38] Plaintiffs argue that disputed facts exist with respect to whether Bulletin 1508 is applicable to the IEE process, and whether Plaintiffs' IEE complied with

---

[32] *Id.* at p. 16.

[33] *Id.* at p. 10.

[34] *Id.* at pp. 10–11 (citing *Cypress-Fairbanks*, 118 F.3d at 247-48).

[35] Rec. Doc. 25 at p. 3 (distinguishing *Shaffer v. West*, 546 U.S. 49, 62 (2005)).

[36] *Id.* at p. 5.

[37] *Id.*

[38] *Id.* at pp. 11–12.

Bulletin 1508's relevant provisions.[39]  Plaintiffs  allege that OPSB failed to provide them with adequate written notice of the applicable Bulletin 1508 requirements, in violation of the IDEA.[40]

Plaintiffs additionally argue that Defendant's policy of requiring all parents, including Plaintiffs, to "up-front" the costs of an independent IEE is contrary to the IDEA's requirement that such evaluations be at "public expense."[41] Requiring such up-front payment, according to Plaintiffs, "makes the important right to an IEE unavailable to most parents in Orleans Parish."[42] Plaintiffs additionally argue that imposing a $3,000 limit on the IEE is inconsistent with the right to an IEE at public expense.[43]

## C.    OPSB's Arguments in Further Support

In response, OPSB argues that the IEE at issue failed to comply with Bulletin 1508 in 31 specific ways, and that accordingly "the School Board has not denied reimbursement to the plaintiffs for an IEE that meets agency criteria."[44] OPSB contends that it provided Plaintiffs with notice regarding the agency criteria requirement. With respect to the $3,000 cap, OPSB avers that it provided Plaintiffs with an opportunity to present reasons for exceeding that financial limit, but that Plaintiffs failed to do so.[45] OPSB additionally argues that it did not insist that Plaintiffs pay all costs

---

[39] *Id.* at p. 17.

[40] *Id.* at pp. 22–23.

[41] *Id.* at p. 18 (citing 34 C.F.R. § 300.502(b)(2)(i)–(ii)).

[42] *Id.* at p. 20.

[43] *Id.* at p. 21.

[44] Rec. Doc. 31 at p. 6.

[45] *Id.* at p. 7.

6

up front.[46] Finally, OPSB states that it "reviewed Dr. Brockman's evaluation and notified the plaintiffs of specific items of non-compliance per Bulletin 1508, and [OPSB] waits for a revised IEE to review."[47]

### D.   Plaintiffs' Arguments in Reply

Plaintiffs  aver that it is contrary to the IDEA  to require, as a condition of reimbursement, that an IEE comply with elements of Bulletin 1508 that are unrelated to the scope of their disagreement with OPSB's prior evaluations.[48] Plaintiffs contend that a material issue of fact exists with respect to which factors under Bulletin 1508 are relevant in assessing the IEE.[49] Specifically, according to Plaintiffs, OPSB contends that the purpose of the IEE was to determine whether S. B. had a Specific Learning Disability ("SLD"), while Plaintiffs state that the purpose was to address his occupational therapy testing and social functioning.[50] Plaintiffs reaver that requiring every element in Bulletin 1508 to be satisfied in an independent IEE is onerous and impractical, and "rings hollow under IDEA case law."[51]  Finally, Plaintiffs argue that Bulletin 1508 applies to school districts, but not to parents.[52]

### E.   OPSB's Arguments in Reply

OPSB contends first that it timely granted Plaintiffs' request for an IEE at public expense

---

[46] Id.

[47] Id. at p. 9.

[48] Rec. Doc. 35 at p. 3.

[49] Id. at p. 5.

[50] Id. at pp. 5–6.

[51] Id. at p. 11 (citing Florence County School District 4 v. Carter, 510 U.S. 7 (1993)).

[52] Id. at p. 13.

without requiring Plaintiffs to provide reasons for their disagreement with OPSB's prior evaluation on S. B.[53] OPSB contends that whether S. B. had a specific learning disability is at issue because the administrative record indicates that "[a]t the time the IEE was conducted, [S. B.] was identified as a student with Autism, the parents also suspected that he might also have a learning disability."[54] Additionally, OPSB states that the IEE was prompted by the parents' "request to assess his current needs."[55] Finally, OPSB argues that the IEE yielded two exceptionalities: "Autism" and "Learning Disabled."[56] According to OPSB, Dr. Brockman was obligated by the IDEA to assess all areas of suspected disability, including autism and specific learning disabilities.[57] OPSB additionally argues that compliance with Bulletin 1508 is applicable to private and independent evaluators who are "qualified examiners," including those hired by parents.[58]

### F.      *Plaintiffs' Sur-Reply*

Plaintiffs reaver that none of the 31 compliance issues identified by OPSB are relevant to a decision to deny a reimbursement of an IEE at public expense.[59] Plaintiffs make several additional arguments with respect to a 2012 hearing, the record for which has not been provided to the Court.[60]

---

[53] Rec. Doc. 36 at p. 2.

[54] *Id.* at p. 3.

[55] *Id.*

[56] *Id.* at p. 4.

[57] *Id.* (citing 34 C.F.R. § 300.304(b)(4)).

[58] *Id.* at pp. 5, 10.

[59] Rec. Doc. 41 at p. 1.

[60] *Id.*

### G.     OPSB's Sur-Reply

OPSB reavers that Bulletin 1508's criteria is applicable to private evaluations, and that "even if an IEE at issue is considered a re-evaluation, Bulletin 1508 (i.e., the applicable 'agency criteria') requires that initial eligibility criteria be addressed for any additional  exceptionality."[61] It is irrelevant, according to OPSB, whether an IEE is considered a re-evaluation.[62] OPSB makes several additional arguments related to a 2012 hearing, the record of which has not been provided to this Court.[63]

## III. Standard of Review

The standard of review that the Court must apply in considering a challenge to a hearing officer's decision under the IDEA differs from the summary judgment standard outlined in *Anderson v. Liberty Lobby* and *Celotex Corp. v. Catrett*.[64]   Under the IDEA, "any party aggrieved by the finding and decision made [by a hearing officer following an impartial due process hearing], shall have the right to bring a civil action with respect to the complaint presented ... without regard to the amount in controversy."[65] In any such action, the district court shall "(i) receive the records of the administrative proceedings; (ii) hear additional evidence at the request of a party; and (iii) grant such

---

[61] Rec. Doc. 44 at p. 2.

[62] *Id.* at p. 3.

[63] *Id.*

[64] *Sylvie M. v. Bd. of Educ. of Dripping Springs Indep. Sch. Dist.*, 48 F.Supp.2d 681, 694 (W.D. Tex.1999) aff'd, 214 F.3d 1351 (5th Cir. 2000) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

[65] 20 U.S.C. § 1415(i)(2)(A), (3).

relief as it determines appropriate based upon the preponderance of the evidence."[66] "[A]though the district court must accord 'due weight' to the hearing officer's findings, the court must ultimately reach an independent decision based on a preponderance of the evidence."[67] The district court's review of the hearing officer's decision is "virtually de novo."[68]

Accordingly, even though it is termed "summary judgment," the district court's decision is based on a preponderance of the evidence, so the existence of a disputed issue of material fact will not necessarily defeat the motion.[69] In reaching its determination, "courts must be careful to avoid imposing their view of preferable educational methods upon the States."[70] "The role of the judiciary is not to second-guess the decisions of school officials or to substitute their plans for the education of disabled students with the court's."[71]   Courts do not have the "specialized knowledge and

---

[66] *See* 20 U.S.C. § 1415(i)(2)(B). With respect to the pending motion, Plaintiffs have submitted additional evidence including: the affidavit of an intern at the Advocacy Center (Rec. Doc. 24-1); the affidavit of Howard Knoff (Rec. Doc. 24-2); the affidavit of Issac Soileau (Rec. Doc. 24-4); the deposition transcript of Dr. Rosalynne Dennis (Rec. Doc. 24-2); deposition exhibits (Rec. Doc. 24-6); public record request and response (Rec. Doc. 24-7); affidavits of Plaintiffs (Rec. Docs. 24-8, 24-9; 41-2); and an OPSB evaluation of S.B. (Rec. Doc. 41-3). OPSB has also submitted additional evidence including partial hearing transcripts dated May 24, 2012 and April 24, 2012 before Administrative Law Judge Tameka Johnson Moore (Rec. Docs. 19-3, 44-1); the affidavit of Dr. Steven Welsh (Rec. Doc. 31-1); and results of an evaluation of S.B. (Rec. Doc. 41-4).

[67] *Klein Indep. Sch. Dist. v. Hovem*, 690 F.3d 390, 394 (5th Cir. 2012); *see also Teague Indep. Sch. Dist. v. Todd L.*, 999 F.2d 127, 131 (5th Cir. 1993).

[68] *Klein Indep. Sch. Dist.*, 690 F.3d at 394 (quoting *Cypress–Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 252 (5th Cir. 1997)).

[69] 20 U.S.C. § 1415(i)(2)(C); *see Sylvie M. v. Bd. of Educ. of Dripping Springs Indep. Sch. Dist.*, 48 F.Supp.2d 681, 695 (W.D. Tex.1999) aff'd, 214 F.3d 1351 (5th Cir. 2000); *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 112 (2d Cir. 2007) (stating that the court must engage in an independent review of the administrative record and make a determination based on a preponderance of the evidence); *Wall v. Mattituck–Cutchogue Sch. Dist.*, 945 F.Supp. 501, 508 (E.D.N.Y. 1996) (holding that, in IDEA actions, summary judgment "is not directed to discerning whether there are disputed issues of fact, but rather whether the administrative record, together with any additional evidence, establishes that there has been compliance with the IDEA's processes and that the child's educational needs have been appropriately addressed.").

[70] *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 207 (1982).

[71] *R.H. v. Piano Indep. Sch. Dist.*, 607 F.3d 1003, 1010 (5th Cir. 2010), citing *Flour Bluff Indep. Sch. Dist. v. Katherine M.*, 91 F.3d 689, 693 (5th Cir. 1996).

experience" necessary to resolve "persistent and difficult questions of educational policy."[72] Since courts lack this expertise, "the Court is cognizant that the close scrutiny warranted by de novo review should be tempered by the realization that decisions made by those 'in the trenches' of educational service should not be casually disregarded."[73]

The IDEA does not specify which party bears the burden of persuasion at the district court level or at the administrative hearing level. However, in 2005, in *Schaffer v. Weast*, the Supreme Court held that the burden of persuasion in an administrative hearing under the IDEA lies with the party seeking relief.[74] The Court explained that it saw no reason to depart from "the ordinary default rule that plaintiffs bear the risk of failing to prove their claims."[75] *Schaffer* did not address which party should bear the burden of persuasion when a party aggrieved by the decision of the administrative hearing officer challenges that decision in district court. Since then, several circuit courts have held that the party challenging the administrative decision bears the burden of persuasion before the district court as to each claim challenged.[76]  As the Supreme Court noted in *Schaffer*, "[t]he burdens of pleading and proof with regard to most facts have been and should be assigned to the [party] who ... seeks to change the present state of affairs."[77]  Under the IDEA, it is the party "aggrieved by the findings and decision" of the hearing officer that seeks to change the

---

[72] *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 42 (1973).

[73] *Jonathan G. By & Through Charlie Joe G. v. Caddo Parish Sch. Bd.*, 875 F.Supp. 352, 359 (W.D.La.1994).

[74] *Schaffer v. Weast*, 546 U.S. 49, 62 (2005).

[75] *Id*. at 56 (citing 2 J. Strong, McCormick on Evidence § 337, at 412 (5th ed. 1999)).

[76] *See Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 270 (3d Cir. 2012); *J.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 438 (9th Cir. 2010); *Marshall Joint Sch. Dist. No. 2 v. C.D.*, 616 F.3d 632, 636 (7th Cir. 2010); *District of Columbia v. Doe*, 611 F.3d 888, 897 (D.C.Cir. 2010).

[77] 546 U.S. at 56 (quoting McCormick on Evidence § 337, at 412).

present state of affairs.[78] "Absent some reason to believe that Congress intended otherwise," the Court concludes that the burden of persuasion falls where it usually does, on the party seeking relief.[79]  In this case, the burden of persuasion is properly placed upon Plaintiffs, because Plaintiffs are challenging the decision of the ALJ.[80]

## IV. Analysis

The sole issue before the Court is whether Plaintiffs are entitled to reimbursement for the IEE that they obtained. It is Plaintiffs' position that strict compliance with Bulletin 1508 is onerous, impractical, and inconsistent with their right to obtain an IEE at public expense.[81] OPSB contends that it did not deny reimbursement for a compliant IEE; rather, it argues that it denied reimbursement for an evaluation which did not meet the required criteria.[82] A survey of case law indicates that this issue appears to be a matter of first impression in the Fifth Circuit.

### A.     *Independent Education Evaluations under the IDEA*

One  purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education ("FAPE") that emphasizes special education and related services designed to meet their unique needs."[83]  The FAPE required by the IDEA "need not be the

---

[78] *See* 20 U.S.C. § 1415(i)(2)(A).

[79] *See Schaffer*, 546 U.S. at 57–58; *see also Adam J. v. Keller Indep. Sch. Dist.*, 328 F.3d 804, 808 (5th Cir. 2003); *Cypress Fairbanks Indep. Sch. Dist. v. Michael F. by Barry F.*, 118 F.3d 245, 252 (5th Cir. 1997) ("[A] party attacking the appropriateness of an IEP established by a local educational agency bears the burden of showing why the IEP and the resulting placement were inappropriate under the IDEA.").

[80] 20 U.S.C.A. § 1415(i)(2) ("Any party aggrieved by the findings and decision" made in the administrative proceeding "shall have the right to bring a civil action" in state or federal court.).

[81] Rec. Doc. 25 at p. 9.

[82] Rec. Doc. 19-1 at p. 16.

[83] 20 U.S.C. § 1400(d); *see also Bd. of Educ. of the Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 188–89 (1982).

best possible one, nor one that will maximize the child's educational potential; rather, it need only be an education that is specifically designed to meet the child's unique needs, supported by services that will permit him 'to benefit' from the instruction."[84] To achieve FAPE, school districts must implement an Individualized Education Plan ("IEP"), which is "a written statement prepared at a meeting attended by a qualified representative of the school district, a teacher, the child's parents or guardians, and when appropriate, the child himself."[85]  An IEP need not "maximize the child's educational potential"; it "guarantees only a basic floor of opportunity for every disabled child, consisting of specialized instruction and related services which are individually designed to provide educational benefit."[86] The IEP process is a collaborative effort, and the student's parents are guaranteed procedural safeguards to ensure their involvement in the creation and implementation of their child's IEP.[87]

Parents of children with exceptionalities have a "right to evaluation at public expense" under certain circumstances.[88]  Specifically, if a parent "disagrees with an evaluation obtained by the public agency," he or she may "request[ ] an independent educational evaluation at public expense."[89]  The IEE is  "an assessment conducted by a qualified examiner who is not employed

---

[84] *Cypress Fairbanks Indep. Sch. Dist. v. Michael F. by Barry F.*, 118 F.3d 245, 247-48 (5th Cir. 1997) (citing *Rowley*, 458 U.S. 176, 188–89 (1982)).

[85] *Michael F.*, 118 F.3d at 247.

[86] *Id.* at 247–48 (internal quotation marks omitted); see also *Rowley*, 458 U.S. 176, 203–04 (1982).

[87] *Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 989 (5th Cir. 2014) (citing  20 U.S.C. §§ 1400(d)(1)(B) ("The purposes of this chapter are ... to ensure that the rights of children with disabilities and parents of such children are protected."), 1414(c)(3), 1415(a))).

[88] 34 CFR § 300.502(b); *Schaffer v. Weast*, 546 U.S. 49, 60 (2005).

[89] *Id.*

13

by the public agency responsible for the education of the child in question."[90] Once the school board receives a request for an IEE, it must either initiate a due process hearing to show that its evaluation is appropriate, or "ensure that an [IEE] is provided at public expense, unless the agency demonstrates in a hearing under § 300.507 that the evaluation obtained by the parent did not meet agency criteria."[91] Additionally, "the criteria under which the evaluation is obtained . . . *must be the same* as the criteria that the public agency uses when it initiates an evaluation . . ."[92] A public agency is not obligated to reimburse parents of the cost of a privately-obtained IEE unless the evaluation satisfies the above requirements.[93]

### B.    *Compliance with agency criteria*

Plaintiffs have failed to demonstrate by a preponderance of the evidence that they are entitled to reimbursement for the IEE that they obtained. As stated above, an IEE at public expense must conform to the same criteria that the agency uses when it initiates an evaluation.[94] When OPSB initiates an evaluation, it uses the criteria promulgated by the Louisiana Board of Elementary and Secondary Education ("BESE") in Bulletin 1508.[95] Bulletin 1508 states that: "[t]he Criteria for Eligibility describes the minimal data that must be obtained in order to determine whether the student has an exceptionality and is in need of special education services."[96] Accordingly, under the

---

[90] 34 C.F.R. § 300.502(a)(3)(i).

[91] 34 C.F.R. § 300.502(b)(2)(i) and (ii).

[92] 34 C.F.R. § 300.502(e) (emphasis added).

[93] *See P.R. v. Woodmore Local Sch. Dist., 256 Fed.Appx.* 751, 754 (6th Cir. 2007).

[94] 34 C.F.R. § 300.502(b)(2)(i) and (ii).

[95] Rec. Doc. 19-1 at pp. 15–16.

[96] LA. ADMIN. CODE tit. 28, pt. CI, Bulletin 1508, § 101(B).

IDEA, an IEE obtained at public expense in the Orleans Parish School District, including the IEE obtained by Plaintiffs, is subject to evaluation under Bulletin 1508.[97]

The parties agree that the IEE obtained by Plaintiffs does not meet Bulletin 1508 criteria.[98] The disagreement in this matter stems from the scope of compliance that is a necessary prerequisite for reimbursement. After receiving and reviewing the IEE, OPSB notified Plaintiffs that 31 "components" of the IEE do not meet Bulletin 1508 criteria.[99] Those "components" are grouped into the following four categories: (1) Missing initial evaluation components; (2) Student does not meet eligibility for Specific Learning Disability; (3) Student does not meet eligibility for physical therapy; and (4) Noncompliant Occupational therapy assessment.[100] OPSB indicated no additional areas of non-compliance, even though Bulletin 1508 includes other areas of evaluation.[101]

### 1.    "Missing initial evaluation components"

As stated above, the criteria under which an IEE at public expense is obtained must be the same as the criteria that the public agency uses when it initiates an evaluation.[102] OPSB uses the criteria set forth in Bulletin 1508 when it initiates an evaluation. As indicated in OPSB's May 7, 2012 letter to Plaintiffs,  the IEE at issue does not meet Bulletin 1508 criteria with respect to 12

---

[97] *See* 34 C.F.R. § 300.502(e) (emphasis added).

[98] Rec. Doc. 19-1 at p. 14; Rec. Doc. 11-1 at p. 201.

[99] Rec. Doc. 11-1 at p. 122; *see also* Rec. Doc. 41-1.

[100] *Id.* at pp. 122-125.

[101] For example, Bulletin 1508 includes, among others, criteria for evaluating traumatic brain injury, deaf-blindness, and developmental delays.

[102] 34 C.F.R. § 300.502(e) (emphasis added).

initial evaluation components.[103]  Accordingly, the IEE does not comply with agency criteria, as required in order for an IEE to qualify as one at public expense.

### 2.    "Student does not meet eligibility for Specific Learning Disability"

Plaintiffs represent that  the IEE was not obtained to test for a specific learning disability, and therefore that it need not comply with Bulletin 1508's criteria for evaluating specific learning disabilities.[104]  The Court finds this argument unavailing for two reasons. First, Plaintiffs argue that Bulletin 1508 compliance should not be required for evaluations that are not related to the scope of their disagreement with OPSB's prior evaluations.[105] However, in order for an IEE to be obtained at public expense, the parents must "disagree[] with an evaluation obtained by the public agency."[106] Although failure to provide notice of disagreement *prior* to obtaining the IEE does not discharge the public agency from its obligation of reimbursement, it appears well settled that an IEE at public expense is available only where the parents disagree, at some point, with the district's evaluation.[107] Here, Plaintiffs appear to admit that they did not disagree with OPSB's prior evaluations of S.B. for specific learning disabilities. Still, Plaintiffs seek reimbursement for the entire IEE, which includes

---

[103] Rec. Doc. 24-6 at pp. 55-56.

[104] *See* Rec. Doc. 35 at p. 3;  Rec. Doc. 24-8 at p. 2.

[105] Rec. Doc. 35 at p. 3.

[106] *See* 34 C.F.R. § 300.502(b)(1) (stating that if a parent "disagrees with an evaluation obtained by the public agency," it can "request[ ] an independent educational evaluation at public expense"); *Schaffer v. Weast*, 546 U.S. 49, 60 (2005) (stating that a parent may request an IEE at public expense *if they disagree with an evaluation provided by the school*).

[107] *See, e.g.*, *P.R. v. Woodmore Local Sch. Dist.*, 256 Fed.Appx. 751, 755 (6th Cir. 2007) (unpublished); *Board of Educ. of Murphysboro Community Unit School Dist. No. 186 v. State of Illinois*, 41 F.3d 1162, 1169 (7th Cir. 1994) ("parents can initiate an evaluation before notifying a school district that they disagree with the district's evaluation.") (citing *Hudson v. Wilson*, 828 F.2d 1059, 1065 (4th Cir. 1987)).

evaluations for specific learning disabilities.[108] As the Court has already stated, a public agency is not obligated to reimburse parents for the cost of any and all privately-obtained evaluations.[109] Without any guiding authority, the Court will not accept Plaintiffs' invitation to expand the law by finding that assessments obtained beyond the scope of an IEE may still be considered "at public expense."

Notwithstanding Plaintiff's arguments to the contrary, the record indicates that the Plaintiffs stated in their initial request for an IEE that "[p]ursuant to the laws that govern special education, [S.B.] is entitled to receive a *comprehensive* IEE at public expense."[110] The record indicates that at the time of the IEE, Plaintiffs suspected that S.B. might have a learning disorder, and that Dr. Brockman evaluated S.B. for learning disabilities.[111] Even if, based on this evidence, the assessments are considered within the scope of the IEE, Plaintiffs still are not entitled to reimbursement because they do not satisfy the criteria set forth in Bulletin 1508. OPSB indicated seven specific areas in which the IEE does not comply with the requirements for evaluations of specific learning disabilities set forth in Bulletin 1508.[112] Accordingly, the Court cannot find that the evaluation complies with the required agency criteria with respect to testing for specific learning disabilities.

---

[108] *See* Rec. Doc. 11-1 at p. 113 (diagnosing S.B. with three learning disabilities).

[109] *See P.R. v. Woodmore Local Sch. Dist.*, 256 Fed.Appx. 751, 754 (6th Cir. 2007).

[110] Rec. Doc. 11-1 at p. 68 (emphasis added).

[111] *See* Rec. Doc. 11-1 at p. 62 ("At the time the IEE was conducted, [S.B.] was identified as a student with Autism, although the Parents suspected that he might also have a learning disability."); *id.* at p. 113 (diagnosing S.B. with three learning disabilities). *See also* Rec. Doc. 19-3 at pp. 200-01.

[112] Rec. Doc. 24-6 at pp. 56–57.

3.     **"Student does not meet eligibility for physical therapy" and "Noncompliant Occupational therapy assessment"**

According to Plaintiffs, the IEE was obtained to determine "S.B.'s Occupational Therapy testing and recommendations, his social functioning and lack of evaluation in this area, and the recommendations for his program."[113] In the May 7, 2012 letter, OPSB indicated six specific areas in which the IEE does not comply with the requirements for occupational therapy assessments, as well as six areas in which the IEE does not comply with the requirements for physical therapy evaluations.[114] Again, 34 C.F.R. § 300.502(b) requires that an IEE obtained at public expense meet agency criteria.[115] The Court finds that the IEE at issue does not comply with the Bulletin 1508 criteria for occupational therapy and physical therapy evaluations.

A public agency is not obligated to reimburse parents of the cost of a privately-obtained IEE unless the evaluation satisfies the requirements set forth in 34 C.F.R. § 300.502(b).[116] The IEE obtained by Plaintiffs does not satisfy those requirements; namely, it does not meet the criteria set forth in Bulletin 1508 for the types of evaluations that were obtained. Contrary to Plaintiffs' assertions, the record does not indicate that OPSB required Plaintiffs to replicate every provision of Bulletin 1508;  rather, it appears that OPSB required compliance only with respect to specific areas that were actually addressed or tested in the IEE. Accordingly, Plaintiff's insistence that OPSB required the IEE to "fully replicate or supplant the procedures in Bulletin 1508"[117] is inconsistent

---

[113] Rec. Doc. 35 at p. 6.

[114] Rec. doc. 25-6 at pp. 57-58.

[115] 34 C.F.R. § 300.502(b)(2)(i) and (ii).

[116] *See P.R. v. Woodmore Local Sch. Dist.*, 256 Fed.Appx. 751, 754 (6th Cir. 2007).

[117] Rec. Doc. 35 at p. 2.

with the record.

In support of their argument that reimbursement is appropriate, Plaintiffs rely heavily on *A.S. ex rel. S. v. Norwalk Bd. of Educ.*, a non-binding decision where the District Court for the District of Connecticut affirmed a hearing officer's decision requiring a School Board to reimburse parents for the cost of an IEE obtained at public expense.[118] In that case, the hearing officer determined that (1) the Board's evaluation of the student was not appropriate because it did not assess her progress toward the goals and objectives of her IEP, as required under 34 CFR § 300.532(b); (2) the fact that the evaluation was conducted after the parties requested a due process hearing did not alleviate the Board's duty; and (3) the evaluator was entitled to rely on "information already in the possession of the Board" to complete the IEE because "[t]he plain language of the applicable regulations requires only that a parent's expert meet the same criteria that the Board used when initiating its evaluation, not that the expert employ a methodology approved by the Board."[119] These facts are easily distinguishable from the present case, where the ALJ found that Plaintiffs were not entitled to reimbursement specifically and solely because their IEE did not meet the same criteria that OPSB uses when initiating its evaluations.[120]

As stated above, a public agency is not obligated to reimburse parents of the cost of a privately-obtained IEE if "the agency demonstrates in a hearing under § 300.507 that the evaluation obtained by the parent did not meet agency criteria."[121] "[T]he criteria under which the evaluation

---

[118] *A.S. ex rel. S. v. Norwalk Bd. of Educ.*, 183 F.Supp.2d 534 (D. Conn. 2002).

[119] *A.S. ex rel. S. v. Norwalk Bd. of Educ.*, 183 F.Supp.2d 534, 551 (D. Conn. 2002).

[120] Rec. Doc. 11-1 at pp. 201-02.

[121] 34 C.F.R. § 300.502(b)(2)(i) and (ii).

is obtained . . . *must be the same* as the criteria that the public agency uses when it initiates an evaluation . . ."[122] OPSB has demonstrated that Plaintiffs are not entitled to reimbursement because the IEE at issue does not comply with Bulletin 1508 criteria with respect to the four areas of testing listed above.[123] Accordingly, the IEE obtained by Plaintiffs does not qualify as one obtained at public expense, and the remedy of reimbursement is not available.[124]

## C.    *Notice of agency criteria*

Plaintiffs additionally argue that summary judgment is inappropriate because OPSB failed to provide them with "adequate written notice of the Applicable [sic] Bulletin 1508 requirements."[125] The record indicates that when OPSB granted Plaintiffs' request for an IEE at public expense, it stated that the assessment must follow the requirements outlined in Bulletin 1508 and provided a link to an online version of the document.[126] Additionally, when OPSB notified Plaintiffs that the IEE was not compliant with Bulletin 1508, it invited Dr. Brockman to contact the OPSB Appraisal External Evaluation Reviewer regarding the areas of non-compliance.[127] There is no evidence in the record that such contact was made. Considering that Plaintiffs cite no legal authority suggesting that the IDEA requires public agencies to provide parents with any additional or different form of notice, such as a checklist, the Court concludes that OPSB's actions complied with the regulations set forth by the IDEA.

---

[122] 34 C.F.R. § 300.502(e) (emphasis added).

[123] Rec. Doc. 11-1 at p. 201. *See also* Rec. Doc. 11-1 at p. 62; pp. 97–98.

[124] 34 C.F.R. § 300.502(e).

[125] Rec. Doc. 35 at p. 2.

[126] *See* Rec. Doc. 11-1 at p. 69.

[127] *Id.* at pp. 122–125.

**D.      *Whether OPSB Waived its Right to Object to Reimbursement***

Plaintiffs contend that by failing to request a due process hearing following their requests for an IEE at public expense, and again following their requests for reimbursement, OPSB waived its right to object to reimbursing Plaintiffs for the cost of the IEE.[128] However, as stated above, a public agency is not obligated to reimburse parents of the cost of a privately-obtained IEE unless the evaluation satisfies certain requirements, including compliance with agency criteria. Accordingly, the Court finds Plaintiffs' argument that OPSB has somehow waived its right to object to reimbursing Plaintiffs lacks merit.

## IV. Conclusion

The Court is aware that it does not have the "specialized knowledge and experience" necessary to resolve "persistent and difficult questions of educational policy."[129] However, based on the administrative record and the additional evidence submitted by the parties, the Court cannot conclude by a preponderance of the evidence that Plaintiffs are entitled to the relief that they seek.[130] The Court concludes, therefore, that Plaintiffs are not entitled to reimbursement for the IEE that they obtained, because it does not qualify as one obtained at public expense. Because this issue is dispositive, the Court need not examine Plaintiffs' remaining arguments regarding financial expense.[131] The Court notes, however, that OPSB represented in its briefings and during oral argument that it was willing to work with Plaintiffs to ensure that the IEE conformed to the

---

[128] Rec. Doc. 25 at pp. 23–24.

[129] *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 42 (1973).

[130] *See* 20 U.S.C. § 1415(i)(2)(B).

[131] Plaintiffs additionally devote significant portions of their brief to the expense of the evaluation that they obtained, and their objections to paying that cost "up-front." Because the Court has determined that Plaintiffs are not entitled to reimbursement for the IEE at issue, the Court need not reach the policy concerns outlined by Plaintiffs with respect to cost.

requirements of Bulletin 1508, and that under those circumstances at least partial reimbursement may be possible.[132]

Accordingly,

**IT IS HEREBY ORDERED** that OPSB's "Motion for Summary Judgment"[133] is **GRANTED.**

**NEW ORLEANS, LOUISIANA**, this _20th_ day of January, 2015

*Nannette Jolivette Brown*

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[132] Rec. Doc. 31 at p. 9.

[133] Rec. Doc. 19.