UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| B., et al. | CIVIL ACTION |
| VERSUS | CASE NO. 13-6068 |
| ORLEANS PARISH SCHOOL DISTRICT | SECTION: "G"(3) |

### ORDER

Before the Court is Plaintiffs D.B. and C.B.'s (collectively, "Plaintiffs") "Motion for Remand."[1] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable law, the Court will grant the motion.

### I. Background

*A.  Factual Background*

In this action, Plaintiffs seek reimbursement from the Orleans Parish School District ("OPSB") for expenses related to the initiation and completion of an Independent Educational Evaluation ("IEE") of their son, S.B., which was conducted during the 2011-2012 school year.[2] S.B. is a child identified with the disability of autism under the Individuals with Disabilities Education Act ("IDEA").[3]

On August 25, 2011, Plaintiffs emailed OPSB to request an IEE at public expense for S.B.[4]

---

[1] Rec. Doc. 68.

[2] Rec. Doc. 1 at ¶ 1.

[3] Rec. Doc. 19-6 at ¶ 2.

[4] *Id.* at ¶ 3.

1

OPSB granted the request on September 6, 2011.[5] At the administrative hearing in this matter, Plaintiffs stipulated that OPSB informed them that the IEE must follow the criteria set forth in Louisiana Bulletin 1508, Pupil Appraisal Handbook ("Bulletin 1508").[6] On April 23, 2012, OPSB received a signed copy of the IEE.[7]

OPSB reviewed the evaluation against the applicable agency criteria set forth in Bulletin 1508 and notified Plaintiffs on May 7, 2012 that the IEE was not in compliance with the agency criteria.[8] On January 31, 2013, OPSB received a request from Plaintiffs for reimbursement for the cost of the IEE.[9] On February 28, 2013, OPSB notified Plaintiffs again that an IEE obtained with public funds must meet the same criteria used by the OPSB when it conducts an evaluation, and the IEE submitted for review failed to meet those criteria.[10] OPSB denied reimbursement for the IEE at issue.[11]

On April 30, 2013, Plaintiffs requested a due process hearing in part to contest OPSB's denial of reimbursement for the IEE.[12] A preliminary hearing was conducted on June 18, 2013 before Administrative Law Judge Robert Aguiluz (the "ALJ") of the Division of Administrative

---

[5] *Id.* at ¶ 5; Rec. Doc. 25-1 at ¶ 5; Rec Doc. 1 at ¶ 15.

[6] *Id.* at ¶ 6; *see also* Rec. Doc. 19-4 at 3.

[7] Rec. Doc. 19-6 at ¶ 10.

[8] *Id.* at ¶ 11.

[9] *Id.* at ¶ 40.

[10] *Id.* at ¶ 15.

[11] *Id.* at ¶ 17.

[12] Rec. Doc. 11-1 at 8.

2

Law.[13] On August 14, 2013, the ALJ found that "[r]eimbursement is not a remedy available to the parents under the IDEA because the criteria for the evaluation obtained by the parents was not the same as the required Bulletin 1508 criteria used by the OPSB."[14]

## B. *Procedural Background*

On October 7, 2013, Plaintiffs filed the Complaint in this matter, wherein they seek injunctive relief in the form of reimbursement of all expenses related to obtaining and conducting the IEE at issue.[15] OPSB filed a motion for summary judgment on July 31, 2014,[16] which the Court granted on January 20, 2015, finding that Plaintiffs were not entitled to reimbursement for the IEE that they obtained, because it did not meet agency criteria.[17] On February 20, 2015, Plaintiffs filed an appeal of this Court's Order to the Fifth Circuit.[18]

On February 4, 2016, the Fifth Circuit issued a judgment vacating this Court's Order and remanding the case to this Court for further proceedings in accordance with its opinion.[19] In its opinion, the Fifth Circuit ruled that the degree of compliance necessary for an IEE to "meet agency criteria" under 34 C.F.R. § 300.502 was "substantial," rather than strict, compliance.[20] Specifically, the Fifth Circuit held that "'[s]ubstantial compliance,' allowing reimbursement in this

---

[13] *Id.* at 210.

[14] *Id.* at 202.

[15] Rec. Doc. 1. Plaintiffs additionally seek a declaratory judgment.

[16] Rec. Doc. 19.

[17] Rec. Doc. 54.

[18] Rec. Doc. 56.

[19] Rec. Doc. 61.

[20] *See Seth B. ex rel. Donald B. v. Orleans Par. Sch. Bd.*, 810 F.3d 961, 978 (5th Cir. 2016).

3

context, means that insignificant or trivial deviations from the letter of agency criteria may be acceptable as long as there is substantive compliance with all material provisions of the agency criteria and the IEE provides detailed, rigorously produced and accessibly presented data."[21] Because this Court had not squarely addressed "this factually specific question," the Fifth Circuit remanded to this Court—or, upon further remand, the administrative hearing officer—to find whether the IEE had substantially complied with Bulletin 1508.[22]

On August 1, 2016, Plaintiffs filed a motion to remand this case to the Division of Administrative Law for an impartial due process hearing on the merits of Plaintiffs' claim for reimbursement.[23] On August 9, 2016, Defendant OPSB filed an opposition.[24]

## II. Parties' Arguments

### A.   *Plaintiffs' Arguments in Support of Remand*

Plaintiffs urge the Court to remand this case to the Louisiana Division of Administrative Law for hearing under the IDEA on their claim that their IEE is substantially compliant with Bulletin 1508 and that they are, therefore, entitled to reimbursement for the evaluation.[25] Plaintiffs argue that, in a case of first impression, the Fifth Circuit held that parents seeking reimbursement for an IEE need to demonstrate "substantial compliance" with agency criteria, and remanded the

---

[21] *Id.* at 979.

[22] *Id.* at 980.

[23] Rec. Doc. 68.

[24] Rec. Doc. 69.

[25] Rec. Doc. 68-1 at 1.

4

case for further proceedings.[26] In reaching this decision, Plaintiffs assert, the Fifth Circuit observed that neither the IDEA nor the regulations define the phrase "substantial compliance," but that because that standard is used in other disputes regarding public education, such a standard could apply to IEEs as well.[27] Plaintiffs contend that the Fifth Circuit's ruling allows the proper adjudicatory body to award reimbursement for Plaintiffs' IEE up to $3,000 if there are insignificant or trivial deviations from the state's evaluation criteria.[28] Therefore, Plaintiffs aver, on remand the fact-finder will need to decide: (1) which of the district's evaluation criteria are significant; and (2) whether the parents' IEE substantially complied with those criteria.[29]

According to Plaintiffs, in rendering its decision, the Fifth Circuit noted that an evidentiary hearing—which was not conducted by the ALJ, apparently in error—would have been "helpful," and that the decision regarding reimbursement may be made either by this Court "or, upon further remand, the administrative hearing officer."[30] Plaintiffs assert that the IDEA grants to parents the right to a due process hearing whenever a school takes any action that would undercut their right to obtain an IEE at public expense, and the only question for this Court at this stage is whether it is appropriate to remand this matter to the Division of Administrative Law.[31] Under the IDEA, Plaintiffs assert, the preferred forum to consider whether an IEE substantially complies with

---

[26] *Id.* at 2–3 (citing *Seth B. ex rel. Donald B. v. Orleans Par. Sch. Bd.*, 810 F.3d 961, 978–79 (5th Cir. 2016)).

[27] *Id.* at 3 (citing *Seth B. ex rel. Donald B.*, 810 F.3d at 977).

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.* at 7.

5

agency criteria is the Division of Administrative law.[32]

Plaintiffs claim that, given the "novel and technical nature of the issues involved," this Court should, consistent with IDEA's statutory scheme, remand the case to the state's Division of Administrative Law for a hearing on the issue of whether Plaintiffs' IEE is substantially compliant with Bulletin 1508.[33] According to Plaintiffs, although IDEA empowers courts to order a broad spectrum of relief, "judicial review is normally not available until all administrative [due process] proceedings are completed."[34] Plaintiffs claim that "IDEA's exhaustion requirement was intended to channel disputes related to the education of disabled children into an administrative process that could apply in the area and promptly resolve grievances."[35] Plaintiffs argue that the exhaustion requirement prevents courts from unnecessarily interrupting the administrative process, allows the agency to apply its specialized expertise to the problem, gives the agency the opportunity to correct its own errors, ensures that there will be a complete factual record for the court to review, and prevents the parties from undermining the agency by deliberately flouting the administrative process.[36] Even where an IDEA administrative hearing may be unsuccessful in resolving a dispute, Plaintiffs contend, it may at least produce a helpful record because administrators versed in the relevant issues will be able to illuminate them for the court.[37]

---

[32] *Id.* at 2.

[33] *Id.* at 7.

[34] *Id.* (quoting *Honig v. Doe*, 484 U.S. 305 (1988)).

[35] *Id.* at 7–8 (quoting *Polera v. Bd. of Educ.*, 288 F.3d 478, 487 (2d Cir. 2002)).

[36] *Id.* at 8–9 (citing *McKart v. United States*, 395 U.S. 185, 193–98 (1969)).

[37] *Id.* at 9 (citing *Riley v. Ambach*, 668 F.2d 635, 640 (2d Cir. 1981)).

6

According to Plaintiffs, when deciding whether IDEA plaintiffs should be subject to the exhaustion requirement, courts generally consider "whether administrative remedies under the facts of a given case will further the general purposes of exhaustion and the congressional intent behind the legislative scheme."[38] Here, Plaintiffs allege, it is clear that the remaining issues in this case are particularly well-suited to resolution by the Division of Administrative Law, as this case involves the interpretation of the extensive evaluation requirements of Bulletin 1508 and the significance of these provisions in whole and in part to the educational decisions being made.[39] Plaintiffs argue that the fact-finder will have to weigh the competing opinions of expert witnesses and consider and weigh the requirements, and the significance, of a number of highly specialized and complex assessment tools and evaluation measurements.[40] Therefore, Plaintiffs aver, given the nature of the inquiry and the scarce judicial resources of the Court, the parties would be best served by allowing the agency to apply its specialized expertise to the problem, to correct its own errors, and enable the development of a complete factual record for the Court to later review, if needed.[41]

### B.     *OPSB's Arguments in Opposition to Remand*

In opposition, Defendant contends that remand is not appropriate in this case because the issue to be decided by this Court is narrow, the record is sufficiently developed, and remand would

---

[38] *Id.* at 10 (quoting *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303 (9th Cir. 1992)).

[39] *Id.*

[40] *Id.*

[41] *Id.*

actually hinder judicial efficiency.[42] First, OPSB alleges that this Court is not facing the multiple issues it evaluated when this Court first considered this case, but is left only with the task of analyzing this matter pursuant to a substantial compliance standard.[43] Thus, OPSB claims, the matter does not require the complex and typically fact-intensive inquiry which would accompany, for example, a determination of whether an individualized education program was developed and implemented according to IDEA, or whether a parent is entitled to tuition reimbursement for a private placement or other compensatory relief.[44] Instead, OPSB asserts, the Fifth Circuit has directed this Court to address a single issue: namely, the application of a substantial compliance standard to a single evaluation.[45]

Next, OPSB alleges that the record already before this Court, in addition to evidence that will presumably be presented at trial, will constitute a sufficient volume of relevant exhibits and testimony, including expert testimony, from which this Court can and should render a decision.[46] Indeed, OPSB alleges, in the Fifth Circuit, although a district court "must accord 'due weight' to the [administrative] hearing officer's findings, the court must ultimately reach an independent decision based on a preponderance of the evidence. Accordingly, the district court's review of a hearing officer's decision is virtually *de novo*."[47] Therefore, Defendant argues, the Court must

---

[42] Rec. Doc. 69 at 1.

[43] *Id.* at 5.

[44] *Id.*

[45] *Id.* at 5–6.

[46] *Id.* at 6.

[47] *Id.* (quoting *Cypress-Fairbanks Indep. Sch. Dist. V. Michael F. ex rel. Barry F.*, 118 F.3d 245, 252 (5th Cir. 1997)).

8

nevertheless make an independent decision on a single issue in this matter, and the record already before it, in addition to the information adduced at trial, will allow the Court to make that decision without requiring any additional information from the administrative level.[48]

According to Defendant, it is clear from the structure of Plaintiffs' motion that the purpose of the remand would be to develop a record for appeal to this Court.[49] However, OPSB claims, if a district court determines that it does not require additional information from the administrative level, it can deny a party's request to remand.[50] Indeed, OPSB alleges, district courts within the Fifth Circuit have observed that the general consensus is that IDEA's additional evidence provision is limited, and the decision of whether to allow any additional evidence to be presented is within the discretion of the district court.[51] Here, Defendant contends, this Court should exercise its discretion to deny the motion to remand on this basis alone.[52]

OPSB asserts that there is no need here for additional evidence from remand to the administrative level, as Plaintiffs have had two opportunities for full and unfettered discovery at the federal district court level in this matter, and numerous witnesses, including expert witnesses, have been deposed and are ready to testify at trial in this matter in September 2016.[53] In addition, Defendant contends, nothing in the Fifth Circuit's ruling obligates this Court to remand the matter

---

[48] *Id.*

[49] *Id.*

[50] *Id.* at 7.

[51] *Id.* (citing *D.A. v. Houston Indep. Sch. Dist.*, 716 F. Supp. 2d 603, 616 (S.D. Tex. 2009); *Burks v. Bogalusa City Sch. Bd.*, No. 98-1333, 1999 WL 627398 (E.D. La. Aug. 13, 1999)).

[52] *Id.*

[53] *Id.*

9

to the administrative level, as the Fifth Circuit did not direct or suggest that this Court should remand the case.[54] Instead, OPSB alleges, the Fifth Circuit left the decision for further remand to the discretion of this Court, and expressly indicated that this Court has the ability to appropriately address the factually specific question regarding substantial compliance now.[55] Moreover, Defendant argues, if Plaintiffs genuinely believe that remand to the administrative level is appropriate, they did not need to wait until after discovery, including depositions of the parties' respective experts taken less than two weeks ago and within two months of the case's trial date, to request a remand.[56] Therefore, OPSB claims, in light of the factual and procedural posture of this matter, remand to the administrative level would not afford this Court with information that it cannot already easily obtain at the upcoming trial.[57]

Finally, OPSB asserts that based on the course of this litigation, at least with regard to Plaintiffs' appeals of adverse rulings at the administrative and district court level, there is little doubt that if this Court remands the case, Plaintiffs will again appeal an adverse ruling from the ALJ.[58] OPSB argues that once the ALJ correctly determines that the IEE is not substantially compliant with agency criteria, the case will inevitably come before this Court for a third time, and Plaintiffs will ultimately claim three opportunities to conduct discovery prior to trial on the

---

[54] *Id.* at 8.

[55] *Id.*

[56] *Id.* at 8–9.

[57] *Id.* at 9.

[58] *Id.*

merits.[59] OPSB argues that this "valid and highly probable prediction of the course of this litigation should weigh heavily in favor of maintaining this action before this Court . . . ."[60] According to OPSB, any detour from this Court to the administrative level will result in the continued expenditure of limited public funds by the school board and ultimately this Court, when a decision is again appealed to it.[61] Therefore, Defendant argues, judicial economy would be best served if the Court denies the motion to remand.[62]

### III. Law and Analysis

*A.     Legal Standard*

Under the IDEA, school districts that receive federal funds must provide special education students a free and appropriate public education ("FAPE") in the least restrictive environment.[63] The statute provides parents of children covered by the Act with rights and procedures, including the right to present complaints on any matters related to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to the child.[64]

IDEA is "frequently described as a model of 'cooperative federalism.'"[65] It "leaves to the

---

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] *Id.*

[63] 20 U.S.C. § 1412(a)(1)(A).

[64] 20 U.S.C. § 1415(a)(d); *White v. Ascension Par. Sch. Bd.*, 343 F.3d 373, 378 (5th Cir. 2003).

[65] *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 52 (2005) (quoting *Little Rock Sch. Dist. v. Mauney*, 183 F.3d 816, 830 (8th Cir. 1999)).

States the primary responsibility for developing and executing educational programs for handicapped children, [but] imposes significant requirements to be followed in the discharge of that responsibility."[66] The core of the statute, however, is the cooperative process that it establishes between parents and schools.[67]

Under the IDEA, parents who disagree with a school district's evaluation of their child may be entitled to an IEE at public expense.[68] An ALJ may award reimbursement to a parent who is unlawfully denied payment for an IEE.[69] The IDEA allows an ALJ to find, in matters alleging a procedural violation, that a child "did not receive a free appropriate public education" if the violation impeded the child's right to a FAPE, significantly impeded the parents' opportunity to participate in the decision-making process regarding the provision of a FAPE to the parents' child, or caused a deprivation of educational benefits.[70] Under the IDEA, "any party aggrieved by the finding and decision made [by a hearing officer following an impartial due process hearing], shall have the right to bring a civil action with respect to the complaint presented . . . ."[71]

Under 20 U.S.C. § 1415(i)(2)(C), which formed the basis for this action, a district court must (i) "receive the records of the administrative proceedings"; (ii) "hear additional evidence at the request of a party"; and (iii) base "its decision on the preponderance of the evidence" and

---

[66] *Bd. of Ed. of Hendrick Hudson Central Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 183 (1982).

[67] *Schaffer ex rel. Schaffer*, 546 U.S. at 53.

[68] *Seth B. ex rel. Donald B. v. Orleans Par. Sch. Bd.*, 810 F.3d 961, 962 (5th Cir. 2016).

[69] *See Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 526 (2007).

[70] 20 U.S.C. § 1415(f)(3)(E)(ii).

[71] 20 U.S.C. § 1415(i)(2)(A), (3).

"grant such relief as the court determines is appropriate." The district court is required to "accord 'due weight' to the hearing officer's findings," but it "must ultimately reach an independent decision based on the preponderance of the evidence."[72] Thus, "the district court's review of a hearing officer's decision is virtually de novo."[73]

In reaching its determination, "courts must be careful to avoid imposing their view of preferable educational methods upon the States." [74] "The role of the judiciary is not to second-guess the decisions of school officials or to substitute their plans for the education of disabled students with the court's." [75] Courts do not have the "specialized knowledge and experience" necessary to resolve "persistent and difficult questions of educational policy."[76] Since courts lack this expertise, "the Court is cognizant that the close scrutiny warranted by de novo review should be tempered by the realization that decisions made by those 'in the trenches' of educational service should not be casually disregarded."[77]

*B.     Analysis*

In cases involving the IDEA, "judicial review is normally not available until all administrative proceedings are completed."[78] The exhaustion requirement was intended to channel

---

[72] *Id.* at 966 (quoting *Cypress–Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 252 (5th Cir. 1997)).

[73] *Id.* at 967 (internal quotation marks omitted).

[74] *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 207 (1982).

[75] *R.H. v. Piano Indep. Sch. Dist.*, 607 F.3d 1003, 1010 (5th Cir. 2010), citing *Flour Bluff Indep. Sch. Dist. v. Katherine M.*, 91 F.3d 689, 693 (5th Cir. 1996).

[76] *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 42 (1973).

[77] *Jonathan G. By & Through Charlie Joe G. v. Caddo Par. Sch. Bd.*, 875 F. Supp. 352, 359 (W.D. La. 1994).

[78] *Honig v. Doe*, 484 U.S. 305 (1988).

13

disputes related to the education of disabled children into an administrative process that could apply administrators' expertise in the area and promptly resolve grievances.[79] Implicit in the exhaustion requirement is the recognition that although the district court is required to review a hearing officer's findings essentially de novo, it benefits from a full factual record, and must "accord 'due weight' to the hearing officer's findings."[80] Indeed, district courts are cautioned "not [to] substitute their assessment of the evidence for that of hearing officers."[81]

Here, the Court has a relatively developed factual record before it, in light of the fact that the litigants have had two opportunities to conduct discovery in federal court and are scheduled to begin trial within one month. However, as the Fifth Circuit noted in its opinion remanding the case to this Court, although this Court did not err in reviewing the record below it when Defendant filed its motion for summary judgment, the ALJ appeared to have erred by failing to hold a due process hearing where the parties could confront and cross-examine witnesses.[82] Thus, the Fifth Circuit held, although a remand "was not necessarily required to address the procedural failing below," such a hearing below the district court "might have been helpful."[83]

Moreover, as the Fifth Circuit acknowledged, neither statutory nor judicial authority previously required this Court to apply a "substantial compliance" standard for determining

---

[79] *See, e.g.*, *Polera v. Bd. Of Educ.*, 288 F.3d 478, 487 (2d Cir. 2002); *Crocker v. Tenn. Secondary Sch. Athletic Ass'n*, 873 F.2d 933, 935 (6th Cir. 1989).

[80] *Cypress–Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 252 (5th Cir. 1997).

[81] *Hammond v. D.C.*, No. 99-1723, 2001 WL 34360429, at *8 (D.D.C. Mar. 1, 2001) (citing *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176, 207 (1982)).

[82] *Seth B. ex rel. Donald B. v. Orleans Par. Sch. Bd.*, 810 F.3d 961, 973 n.43 (5th Cir. 2016).

[83] *Id.* at 973 & n.43.

whether the IEE in this matter complied with Bulletin 1508.[84] Thus, although the Fifth Circuit stated that the "substantial compliance" standard was unlikely to "pose a greater challenge" than the previous standard for evaluating IEEs, "or stretch courts' role farther than the statute itself contemplates,"[85] because the Fifth Circuit on appeal established a new standard by which IEEs must be evaluated, an ALJ has never had the opportunity to develop the record in this matter under the now-binding precedent. The Court, therefore, lacks the benefit of the application of any "specialized knowledge and experience" that the ALJ could bring to "reliably identify which deviations are 'substantial,' [which] require[es] some engagement with substantive questions of special education practice."[86]

Although Defendant argues that the issue before this Court is narrow, that the factual record is sufficiently developed, and that judicial economy would be best served by allowing this case to proceed to trial before this Court without remand, the Fifth Circuit in its opinion left room for this Court to exercise its discretion to have an ALJ first analyze the facts of this case under a substantial compliance standard.[87] The Court cannot "accord 'due weight' to the hearing officer's findings"[88] where, as here, the hearing officer has not had an opportunity to make findings in light of the now clarified legal standard that will apply to this matter. Therefore, the Court finds that resolution of

---

[84] *Id.* at 977.

[85] *Id.* at 980.

[86] *Id.* at 979. *See also id.* at 985 ("The majority opinion . . . provides little direction to district courts on how its new extra-textual standard operates.") (Smith, J., dissenting).

[87] *Id.* at 980 ("If the court below (or, upon further remand, the administrative hearing officer) finds the IEE substantially compliant, it should award reimbursement.").

[88] *Cypress–Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 252 (5th Cir. 1997).

the issue before it will benefit from remanding the case for consideration by an ALJ.

### IV. Conclusion

For the reasons stated above,

**IT IS HEREBY ORDERED** that Plaintiffs' "Motion for Remand"[89] is **GRANTED.**

**NEW ORLEANS, LOUISIANA**, this  30th   day of August, 2016.

*Nannette Jolivette Brown*
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[89] Rec. Doc. 68.